IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILMA DEUTSCH,                          :
                    Plaintiff,          :            CIVIL ACTION
                                        :            NO. 13-3914
        v.                              :
                                        :
WELLS FARGO BANK and                    :
DOES 1 through 50,                      :
                    Defendants.         :

**MEMORANDUM**

**Jones, II, J.**                                        **October 30, 2014**

On July 5, 2013, Wilma Deutsch ("Plaintiff") filed a Complaint in this Court against
Wells Fargo Bank and Does 1 through 50 ("Defendant"). (Dkt No. 1.) Plaintiff alleges seven
claims against Defendant: (1) breach of written contract, (2) negligent interference with
prospective economic relations, (3) libel, (4) violation of the Fair Debt Collections Practices Act,
(5) Violation of Fair Credit Reporting Act; (6) claims for declaratory relief, and (7) claims for
injunctive relief. These claims all relate to Plaintiff's assertion that Defendant failed to honor an
extension option in a contract between Plaintiff and Defendant.

The Court DISMISSES WITH PREJUDICE claims II, IV and V in part, and DISMISSES
WITHOUT PREJUDICE claims I, III, IV in part, VI, and VII.

I.      **Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual
allegations as true, construe the complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled
to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v.
Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). After the Supreme Court's decision
in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of
action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*,
556 U.S. 662, 663 (2009).

When deciding a motion to dismiss under 12(b)(6), the "court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In this case, Plaintiff's claims reference, rely, and relate back to the HELOC agreement. Plaintiff did not attach the agreement or the relevant mortgage to her Complaint. Defendant attached two documents purporting to be the agreement and the mortgage to Defendant's Motion to Dismiss. The Court may consider these two documents in deciding the Motion to Dismiss. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This prevents "a plaintiff with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.*

The Court's consideration of Defendant's attached exhibits of the HELOC agreement and the mortgage does not convert this Motion to Dismiss into a Motion for Summary Judgment. *See Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. Appx. 92, 95 (3d Cir. 2014). Generally, if matters outside the pleadings are presented to and not excluded by the Court, the motion to dismiss must be treated as one for summary judgment under Rule 56 and the Court must give all parties a reasonable opportunity to present pertinent evidence. Fed. R. Civ. P. 12(d). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). "[T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff— is dissipated where plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (internal citations omitted). The Court holds that that Defendant's attachments are undisputedly authentic productions of documents that were integrally and explicitly relied upon in the Complaint.

## II.    Background

In 2000, Plaintiff and her husband entered into a mortgage agreement with Country Wide Home Mortgage for $780,000.00 to purchase 1400 River Road, New Hope, Pennsylvania 18938 ("the property"). (Compl. ¶ 8.) In 2002, Plaintiff and Defendant began communications to enter into an agreement for a Home Equity Line of Credit ("HELOC") for $500,000.00 for ten (10) years for the property. (Compl. ¶ 9.)

The main crux of the dispute between the parties is whether or not the parties' contract contained an extension option to extend the original terms of the agreement for ten years ("the extension"). Plaintiff alleges that:

9.   Plaintiff and Defendant arrived at an agreement whereby Defendant would provide Plaintiff a line of credit in the amount of $500,000.00 for ten (10) years with two ten (10) year extension options.

10.  Pursuant to the terms of the HELOC agreement between Plaintiff and Defendant, in 2012, Plaintiff would be able to exercise one of two 10 year extension options: 1) 10 additional years of the same terms as the original note, interest only ¼ under standard mortgage rate adjustable or 2) 10 further years with 15 years balloon at the end of 10 years.  (Compl. ¶¶ 9-10.)

However, the Court's review of the HELOC agreement finds that this agreement did not provide for these extensions. The HELOC agreement states:

**Maturity Date**

This line of credit will mature on 2/20/2012 ("Maturity Date"). Until the Maturity Date, you agree to make the loans described above, subject to the terms of this agreement. I understand and agree that my unpaid loan balance, together with any unpaid finance charges and other charges, shall be payable to you in full on the Maturity Date, unless you agree to renew this agreement or refinance my loan balance, subject to my credit qualification at the Maturity Date. (Dkt No. 6, Ex. 1.)

In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff clarifies that the HELOC agreement did not contain the extension option, but rather, a separate disclosure form contained the extension and this disclosure was part of the contract between the parties:

Paragraph 10 of the Complaint inaccurately states that the extension option was a term of the HELOC agreement. Rather the extension option contained in the disclosure forms was an independent agreement that, together with the HELOC agreement and the Mortgage comprised the HELOC transaction contract. Thus, the "written agreement" referred to in paragraphs 22, 23, 26, 46, and 49 of the Complaint, accurately stated is actually the HELOC transaction contract, as defined herein….[I]t is the disclosure forms that were issued to Ms. Deutsch on at least three (3) occasions, together with the HELOC agreement and the Mortgage that form the basis of her claim

that defendant had entered into an option agreement with her as part of the HELOC transaction. (Pl's Resp., Dkt No. 10, at 3 n. 2-3.)

In Plaintiff's Response, Plaintiff requested leave to amend any portion of the Complaint where this clarification would cure inadequacies in the Complaint's pleadings. For the purposes of this Motion to Dismiss, the Court can only consider the evidence presented in the Complaint and the attachments of the HELOC agreement and mortgage. The Court is acutely aware of the errors in the Complaint to which Plaintiff alerted the Court in Plaintiff's Response.

In 2012, Plaintiff alleges that she "exercised her contractual right to pursue the first option." (Compl. ¶ 11.) Plaintiff timely paid her monthly balances pursuant to her understanding of her duties under the extension of the agreement. (Compl. ¶ 12.) Plaintiff began to receive collections calls and notices stating that Plaintiff owed a balance of $1,000,000.00 on her HELOC account. (Compl. ¶ 12.)

Upon receipt of the collection notices, Plaintiff communicated with John Stumpf, CEO of Wells Fargo, and Mike Heid, President of Wells Fargo Home Mortgage. (Compl. ¶ 12.) Plaintiff states that she received a communication from Defendant's Home Mortgage Office of Executive Complaints that "acknowledged that Defendant has made an error in processing Plaintiff's HELOC." (Compl. ¶ 14.) Plaintiff states that the Defendant's Home Mortgage Office of Executive Complaints Office told Plaintiff that they would "fully restore[] her credit privileges, and reinstate[] the original terms of Plaintiff's Home Equity Account Agreement." (Compl. ¶ 14.)

In summer of 2012, Plaintiff continued to receive collection notices and phone calls from Defendant's Home Mortgage Department stating that Plaintiff owed a balance of $1,000,000.00 on her HELOC account. (Compl. ¶ 15.) Plaintiff contacted Defendant's Home Mortgage Department. (Compl. ¶ 15.) The Department denied entering into an agreement with the extension with Plaintiff. (Compl. ¶ 15.)

Plaintiff began negotiations with Defendant about purchasing the note. (Compl. ¶ 16.) Plaintiff asserts that Defendant orally agreed to the extension. (Compl. ¶ 17.) Plaintiff continued to pay according to her understanding of the extension. (Compl. ¶ 17.) Defendant's oral agreement to comply with the extension was not memorialized in writing. (Compl. ¶ 17.)

In 2012, Plaintiff discovered that Defendant had reported the $1,000,000.00 alleged remaining balance on her HELOC account to the Credit Bureau. (Compl. ¶ 18.) Plaintiff asserts that the actual remaining balance was $250,000.00. (Compl. ¶ 18.) Plaintiff's credit score was "destroyed." (Compl. ¶ 18.) Because of the changes to her credit score, Plaintiff's credit limits for her credit cards were reduced from $50,000.00 to $2,000.00. (Compl. ¶ 19.) Plaintiff filed for Chapter 7 Bankruptcy. (Compl. ¶ 19.)

### III.    Analysis

#### a.    Claim I: Breach of Contract

Given that the Court cannot find evidence of the extension in the HELOC agreement as alleged in the Complaint, the Court similarly cannot find that Plaintiff has plausibly pled *breach* of that extension. However, given that this issue may be cured through amendment, Plaintiff is granted leave to amend this claim.

#### b.    Claim II: Negligent Interference with Prospective Economic Relations

Plaintiff's negligent interference with prospective economic relations claim is preempted and barred by the Fair Credit Reporting Act. Under the Fair Credit Reporting Act,

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e).

Thus, unless Plaintiff argues "malice" or willfulness, the FCRA provides the exclusive remedy. Plaintiff's allegations under this claim allege that Defendant "mistakenly" informed the Credit Bureau that Plaintiff's account was delinquent when Defendant "should have had internal protocols and procedures" to prevent this "false" reporting. (Compl. ¶¶ 25-27.) Plaintiff fails to allege any instance of malice or willfulness. Further, amendment would likely not cure such issues as a common law negligence cause of action cannot also be malicious or willful. This District has held that "[b]y definition, a plaintiff cannot allege willful negligence." *Shannon v.*

*Equifax Information Services, LLC*, 764 F. Supp. 2d 714, 727-28 (E.D. Pa. 2011); *but see Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 499 n. 5 (E.D. Pa. 2014) (explaining in dicta that a counterargument to the *Shannon* Court's finding could be that "Congress, by including negligence among the listed exemptions in § 1681h(2), clearly envisioned for some sort of willful negligence cause of action to survive preemption").

      The Court holds that Plaintiff's "negligent interference with economic relations" claim is barred by the FCRA. This claim is dismissed with prejudice.

### c.   Claim III: Libel

      Plaintiff's libel claim can succeed if Plaintiff alleges that "false information" was "furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Plaintiff's Complaint (1) fails to allege that the information was "false," as there was no extension in the HELOC agreement, and (2) fails to allege malice. This claim is dismissed. However, given that this issue may be cured through amendment, Plaintiff is granted leave to amend this claim.

### d.   Claim IV: Fair Debt Practices Act

      Defendant is not a "debt collector," but rather an excepted "creditor" under the Fair Debt Practices Act. 15 U.S.C. § 1692(a)(4) & (6). "Creditors—as opposed to 'debt collectors'— generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). Plaintiff concedes as much in her Response. (Pl's Resp. at 8.) This claim is dismissed with prejudice.

### e.   Claim V: Fair Credit Reporting Act

      Plaintiff alleges that Defendant violated the Fair Credit Reporting Act ("FCRA") in four ways: (1) failing to provide complete and accurate information to the Credit Reporting Agencies; (2) failing to provide Plaintiff with notice prior to reporting negative information; (3) failing to provide Plaintiff with notice after reporting negative information; and (4) failing to investigate disputed account information and correct reporting errors within 30 days. (Compl. ¶ 40.) The first three claims are alleged as violations of Section 1681s-2(a) of the FCRA. *See* 15 U.S.C. § 1681s-2(a). No private right of action exists for violations of Section 1681s-2(a). 15 U.S.C. §

1681s-2(c), (d); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Simmsparris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). These claims are dismissed with prejudice.

In contrast, Plaintiff's remaining allegation – Defendant's failure to investigate and correct disputed account information – can be enforced by a private citizen seeking to recover damages against a furnisher under Section 1681s-2(b). *See Simmsparris*, 652 F.3d at 358; *see also Nelson v. Chase Manhattan Mortg. Corp.,* 282 F.3d 1057, 1059 (9th Cir. 2002) (providing a lengthy analysis and determining that Congress did intend for Section 1681s-2(b) to provide a private right of action). However, there are procedural limitations on this right of recovery. "[B]efore a consumer can bring a private claim against a furnisher for failure to provide accurate information to [the credit reporting agency ("CRA")], he must first notify the CRA, who then notifies the furnisher and thereby triggers the furnisher's duty to undertake a reasonable investigation and corrective measures if warranted." *Seamans v. Temple Univ.*, 744 F.3d 853, 867 n. 11 (3d Cir. 2014). "A furnisher of information is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit report pursuant to § 1681s–2(b) until the furnisher receives notice of the dispute from a consumer reporting agency." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008). "Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer." *Simmsparris*, 652 F.3d at 358.

In this case, Plaintiff's Complaint fails to allege that she notified a consumer reporting agency of the disputed entry or that the consumer reporting agency then notified Defendant about the dispute. This claim is dismissed without prejudice, granting Plaintiff leave to amend the Complaint as to this Section 1681s-2(b) theory of liability.

**f.  Declaratory Relief**

This claim is dismissed without prejudice, granting Plaintiff leave to amend her Complaint.

**g.  Injunctive Relief**

This claim is dismissed without prejudice, granting Plaintiff leave to amend her Complaint.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. DARNELL JONES II,      J.