IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMA DEUTSCH, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 13-3914 |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| Defendant. | : | |

**Jones, II, J.**                                                                                                                    **June 19, 2015**

## **MEMORANDUM**

On January 21, 2015, Plaintiff filed an Amended Complaint against Defendant. (Dkt No. 16 [hereinafter AC].) Plaintiff alleged six claims: (1) breach of written contract, (2) libel, (3) violation of the Fair Credit Reporting Act, (4) injunctive relief, (5) violation of the Pennsylvania Uniform Commercial Code, and (6) violation of the Electronic Fund Transfer Act. These claims all relate to Plaintiff's assertion that Defendant failed to honor an extension option in a contract between Plaintiff and Defendant.

Upon consideration of the Amended Complaint, its attachments, including the Home Equity Line of Credit agreement (the "HELOC"), (Dkt No. 16, Ex. A [hereinafter HELOC]), the thirty-year, open-end mortgage (the "Mortgage"), (Dkt No. 16, Ex. B [hereinafter Mortgage]), the disputed check ("Disputed Check"), (Dkt No. 16, Ex. B [hereinafter Disputed Check]), the transaction history for the HELOC account (the "Transaction History"), (Dkt No. 16, Ex. D [hereinafter Transaction History]), Defendant's Motion to Dismiss and Memorandum in Support thereof, (Dkt No. 19; Dkt No. 19-2 [hereinafter MTD]), and Plaintiff's Response to Defendant's Motion to Dismiss, (Dkt No. 25-2, [hereinafter Resp.]), the Court DISMISSES WITH PREJUDICE claims I, II, III, IV, and VI and DISMISSES WITHOUT PREJUDICE claim V.

1

Plaintiff shall have thirty (30) days from the date of the attached order to file a Second Amended Complaint as to claim V only.

## I. Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## II. Statement of Facts

When deciding a motion to dismiss under 12(b)(6), the "court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In this case, Plaintiff has attached the HELOC, the relevant Mortgage, the Transaction History, and the Disputed Check to her Amended Complaint.

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips*, 515 F.3d at 233 (internal quotation and citation omitted).

In 2000, Plaintiff purchased a house with her husband at 1400 River Road, New Hope, Pennsylvania 18938. (AC ¶ 6.) Plaintiff secured a mortgage with Country Wide Home Mortgage for $780,000 and began to make timely payments. (AC ¶ 6.)

On or around February 15, 2002, Plaintiff applied for a HELOC with Defendant. (AC ¶ 7; HELOC at 1.) The HELOC made a $1,000,000 credit limit available to Plaintiff. (HELOC at 1.) The HELOC's Maturity Date was February 20, 2012. (AC ¶¶ 8, 15; HELOC at 1.)

The HELOC states:

> "I understand and agree that my unpaid loan balance, together with any unpaid finance charges and other charges, shall be payable to you in full on the Maturity Date, unless you agree to renew this agreement or refinance my loan balance, subject to my credit qualification at the Maturity Date."

(HELOC at 1.) The HELOC also provides that: "[t]he terms of this agreement replaces the terms of any prior oral or written agreements." (HELOC at 2.)

As a "Security Instrument" for the HELOC, on or around February 15, 2002, Plaintiff entered into a thirty (30) year, open-end Mortgage with Defendant for $1,000,000. (AC ¶ 12; Mortgage ¶¶ 1, 3, 4A.) The maturity date of the Mortgage was also February 20, 2012. (AC ¶ 12; Mortgage ¶ 4.)

The Mortgage provides that: "[The] Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument." (Mortgage ¶ 5.) The Mortgage states in part that "[n]othing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing." (Mortgage ¶ 4B.) The Mortgage "may not be amended or modified by oral agreement." (Mortgage ¶ 14.)

At the same time that Defendant gave Plaintiff the HELOC and the Mortgage agreements, Plaintiff also received certain other paperwork from Defendant. (AC ¶¶ 8-11.) Included among this paperwork "was a document prepared by the Defendant that stated that at the 10-year [M]aturity [D]ate of the HELOC, [Plaintiff] could make one of two possible elections" to extend the HELOC repayment. (the "disclosure forms"). (AC ¶ 9.) "The language setting forth the extension options contained in the disclosure forms provided to [Plaintiff] was not a term of the HELOC agreement." (AC ¶ 10.)

Despite her efforts, Plaintiff has not been able to locate the "disclosure forms containing the extension options." (AC ¶ 13.) A month or two before the Maturity Date of the HELOC, her representative informed Defendant of Plaintiff's intention to exercise one of the purported extension options set forth in the disclosure forms. (AC ¶ 15.) Defendant accepted monthly, interest-only payments on the loan from Plaintiff for eight months (February 2012-September 2012). (AC ¶¶ 16-18.) These payments were executed through two different payment methods. (AC ¶¶ 19-20.)

During this eight month span, Defendant's representatives spoke with Plaintiff's representative. (AC ¶¶ 18-20.) The two parties discussed what paperwork was necessary, if any, to keep the "status quo." (AC ¶ 18.)

In June 2012, Defendant reported to a Credit Reporting Agency ("CRA") that Plaintiff's HELOC was delinquent. (AC ¶ 26.) In or about September 2012, Plaintiff's representative contacted the CRA and informed it that the reports of delinquency were false. (AC ¶ 27.) The CRA told Plaintiff's representatives that they would inform Defendant about this dispute. (AC ¶ 27.) As a result of this reporting, Plaintiff's "credit was effectively destroyed." (AC ¶ 29.) Her credit limits were decreased and she was prevented from refinancing her home. (AC ¶ 30.)

During the summer of 2012, Plaintiff received collection calls informing her that a balance was due and owing on the HELOC. (AC ¶ 22.) Plaintiff began to communicate with Defendant about purchasing the note outright. (AC ¶ 24.) Defendant orally agreed to allow her to exercise one of the alleged extension options and Plaintiff continued to make timely "payments pursuant to the terms of the original HELOC." (AC ¶ 25.)[1]

In December 2009, Defendant cashed an unauthorized check made payable to WCB Holdings, Inc. written from Plaintiff's account to withdraw $250,000.00. (AC ¶ 32.) Sometime after January 30, 2014, Plaintiff obtained a copy of the Transaction Statement for the HELOC account. (AC ¶ 36.) The Transaction Statement for Plaintiff's HELOC was "replete" with unknown and unauthorized transactions initiated by Defendant. (AC ¶ 37.)

### III. Analysis

      **a. Plaintiff's Claims for Breach of Contract (Count I), Libel (Count II), Violation of the Fair Credit Reporting Act, FCRA 15 U.S.C. 1681 (Count III) and Injunctive Relief (Count IV) are Dismissed with Prejudice.**

In Count I of Plaintiff's Amended Complaint, Plaintiff alleges that Defendant breached their contract due to Defendant's alleged failure to honor the extension options found in the disclosure forms. (AC ¶¶ 38-40.) Plaintiff did not attach the disclosure forms to her Amended Complaint because she was unable to locate the forms. (AC ¶ 13.) Defendant argues that even if the disclosure forms were available, they would be superseded by the HELOC. (MTD at 12.) The Court agrees with Defendant.

---

[1] In Plaintiff's Response, Plaintiff included suggested changes to the language of paragraphs 25, 39, and 40 of her Amended Complaint that she would make if she was granted leave to file a Second Amended Complaint. (Resp. at 3.) The Court will take this language into consideration throughout its analysis. Thus, any reference to Amended Complaint paragraphs 25, 39, or 40 will be references to the proposed new language in Plaintiff's Response. The Court finds it appropriate to consider such changes so as to streamline its analysis of whether the Court should grant Plaintiff leave to file a Second Amended Complaint to cure any deficiencies in the Amended Complaint.

Under Pennsylvania law, a breach of contract claim is established if a Plaintiff can prove: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J.F. Walker Co. Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002) (quoting *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000); *CoreStates Bank Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (internal citations omitted)).

First, the HELOC is an enforceable contract. The debate between the parties is whether or not Defendant's failure to adhere to the terms in the purported disclosure forms constituted a breach of the HELOC. The Court must first determine whether or not the Court may consider the alleged contents of the disclosure forms in determining the terms of the HELOC. This analysis turns on the applicability of the parol evidence rule.

In Pennsylvania, the parol evidence rule establishes that:

> Where parties, without any fraud of mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract,…. and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.
>
> The writing must be the entire contract between the parties if parol evidence is to be excluded, and to determine whether it is or not the writing will be looked at, and if it appears to be a contract within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Inv.*, 951 F.2d 1399, 1405 (3d Cir. 1991) (quoting *Gianni v. Russell & Co., Inc.*, 126 A. 791, 792 (Pa. 1924)). "Once a writing is determined to the parties' entire contract," the parol evidence rule bars Plaintiff from

introducing any extrinsic documents that seek to change or alter the contract. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

To determine whether a contract is the parties' entire agreement, courts look at the presence of a merger or integration clause, and the length and detail of the contract. *In Re Green Goblin, Inc.*, 470 B.R. 739, 751 (Bankr. E.D. Pa. 2012) (citing *Kehr Packages v. Fidelity Bank,, N.A.*, 710 A.2d 1169, 1173 (Pa. Super. Ct. 1998)), *aff'd*, 2014 WL 5800601 (E.D. Pa. 2014).

However, there is a collateral agreement exception to the parol evidence rule. The parole evidence rule does not bar evidence of prior or contemporaneous agreements that are entirely separate from the integrated document. *See Cohn v. McGurk*, 479 A.2d 578, 582 (Pa. Super. Ct. 1984) (citing *Kravitz v. Mudry*, 189 A.2d 311, 312 (Pa. Super. Ct. 1963)). Yet, where the alleged separate agreement is "relate[d] to the same subject matter" as the contract at issue and "so interrelated that both would be executed at the same time and in the same contract," the parole evidence rule applies. *Mellon Bank Corp.*, 951 F.2d at 1406.

As a preliminary matter, Plaintiff does not allege fraud or duress. Where it is determined that the written agreement is fully integrated and neither fraud nor duress exists, extrinsic evidence will be superseded by the written document. *See Zugelter v. Bank of America Nat. Trust Fund & Sav.*, 728 F.2d 218, 220 (3d. Cir. 1984).

The Court further finds that the HELOC is fully integrated. The Court considers that the HELOC provides that "[t]he terms of this agreement replaces the terms of any prior oral or written agreements." (HELOC at 2.) Plaintiff argues that the HELOC does not contain a "standard integration clause." (Resp. at 9). Plaintiff is correct that the HELOC does not have a section that states that the HELOC is the "full and final" or "entire" agreement. While not the exact language of a "standard integration clause," the aforementioned contractual provision

7

states that the HELOC supersedes any prior agreement. This matches the spirit of an integration clause. Moreover, the absence of an integration clause "does not automatically subject the written agreement to parol evidence." *Kehr Packages, Inc.*, 710 A.2d at 1173) (citing *Int'l Milling Co. v. Hachmeister Inc.*, 110 A.2d 186, 191 (Pa. 1955)). In the absence of an integration clause, the court "must examine the text [of the agreement] to determine its completeness." *Id.* (quoting *Henry v. First Federal Savings & Loan Assoc.*, 459 A.2d 772, 776 (1983) (internal citations omitted)).

The HELOC specifically makes references to it being secured by a Mortgage and that the Mortgage is part of the full agreement. (HELOC at 3.) In contrast, neither the HELOC nor the Mortgage references any other separate document that should be incorporated into the agreement.[2] The HELOC is a formal document, negotiated and signed by both parties. (AC ¶ 12.)

Further, the HELOC explicitly outlines a Maturity Date of February 20, 2012. (HELOC at 1.) The HELOC clarifies that payment shall be due on such a Maturity Date "unless you agree to renew this agreement or refinance my loan balance, subject to my credit qualification at the Maturity Date." (HELOC at 1.) Thus, the HELOC clearly outlines the only exceptions that would allow for payment beyond the Maturity Date. The HELOC is representative of the full intent and entire agreement between Plaintiff and Defendant.

The Court next considers whether the collateral agreement exception applies. For such analysis, the Court finds instructive the Pennsylvania Superior Court case *Iron Worker's Sav. And Loan Ass'n. v. IWS, Inc.*, 622 A.2d 367, 371-375 (Pa. Super. Ct. 1993). In *Iron Worker's*,

---

[2] Where a document is specifically referenced in the final writing, the document should be incorporated and taken as part of the integrated agreement. *See Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc.*, 394 F. App'x 862, 865 (3d Cir. 2010) (non-precedential).

plaintiff argued that her mortgage payments were not past due, in violation of her mortgage, because the parties had agreed to an extension of the payment date outlined in her mortgage. *Id.* at 371. The court found that any alleged extension agreement – to the extent that one existed – was only made to vary the terms of the mortgage. *Id.* at 373-74. The court found that while evidence of a separate agreement entered into contemporaneously with the contract in question is generally admissible, such evidence is not admissible where the separate contract's "sole purpose" is to vary the terms of the contract in question. *Id.* Where the "separate" contract is not in fact "separate," it is barred by the parol evidence rule. *Id.* at 374; *see also Domino's Pizza LLC v. Deak*, 383 F. App'x 155, 159 n. 5 (3d Cir. 2010) (non-precedential) (citing *Iron Worker's* and finding that "[s]imply enough, if the parol evidence concerns the same subject matter as the contract, it cannot be the basis for a separate agreement").

The alleged content of the disclosure forms and the HELOC are both about the Maturity Date of the HELOC. As in *Iron Worker's*, in this case, the "separate agreement" (the disclosure forms) are in fact not "separate" from the original contract (the HELOC). Unlike the plaintiff in *Cohn*, Plaintiff cannot show that the disclosure forms concern a subject separate from the HELOC. *See also Mellon Bank Corp.*, 750 F. Supp. at 715 (finding that the collateral agreement exception to the parol evidence rule does not apply where the "separate" agreement is in fact about the same subject matter as the original contract). The alleged content of the disclosure forms would act only to modify the terms already set out in writing between the parties in the HELOC.

The parol evidence rule applies. The Court cannot consider the alleged content of the disclosure forms when judging the contractual duties represented in the HELOC. This Court has already determined that the express language found in the HELOC does not allow Plaintiff to

extend the Maturity Date under these alleged circumstances. (Dkt No. 11, Court Order at 3.)

Thus, the Court finds that there was no breach of contract. Amendment would not cure these issues. Therefore, Counts I, II,[3] III,[4] and IV are dismissed with prejudice.

### b. Count V: Violation of The Pennsylvania Uniform Commercial Code, "PCC" 13 Pa. C.S. § 4401 is Dismissed without Prejudice.

Plaintiff alleges in her Amended Complaint that Defendant violated PCC 13 Pa. C.S. § 4401, by honoring an unauthorized check written from her account for $250,000.00 on December 18, 2009. (AC ¶¶ 57-60.)[5] Defendant asserts that these claims should be dismissed because Plaintiff: (1) failed to allege she notified the bank in a timely manner and in accordance with 13 Pa. C.S. § 4406(c) and (2) because the claim is time barred by the statute of limitations[6] imposed by 13 Pa. C.S. § 4406(f).[7] (MTD at 19-21.)

"The Pennsylvania Commercial Code 'PCC' regulates negotiable instruments and is intended to simplify and standardize commercial transactions." *Envtl. Equip. & Serv. Co. v.*

---

[3] To succeed on a libel claim, Plaintiff must allege that "false information" was "furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). The Court determined there was no extension option in the HELOC agreement. Thus, Plaintiff's Amended Complaint fails to allege that the information was "false." This claim is dismissed with prejudice.

[4] Plaintiff alleges in her Amended Complaint that Defendant violated 15 U.S.C. § 1681 by not investigating and correcting a reporting error of her alleged delinquency on the HELOC within thirty (30) days of adequate notice. (AC ¶ 49.) The Court has already found that the HELOC did not include an extension option. Thus, Plaintiff has failed to plead that the information at issue was inaccurate or subject to correction by Defendant. This claim is dismissed with prejudice.

[5] Defendant has also attached a copy of the Disputed Check to their Motion to Dismiss as an exhibit. (MTD, Ex. 1.) Plaintiff disputes the authenticity of said exhibit. The Court will not consider it.

[6] The Court notes that "Section 4406(f) is not a statute of limitations *per se,* but rather 'a precedent to an action which, unlike a statute of limitations, cannot be tolled.'" *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 788 (E.D. Pa. 2008) (quoting *Euro Motors, Inc. v. Southwest Financial Bank and Trust Co.,* 696 N.E.2d 711, 716 (1998)).

[7] If a statute of limitations bar is clear from the face of the complaint, it may be a basis for a motion to dismiss under 12(b)(6), therefore the Court will consider the statute of limitations defense. *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

*Wachovia Bank*, 741 F. Supp. 2d 705, 712 (E.D. Pa. 2010) (citing *New Jersey Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 359, 345 (3d Cir. 1982)). "In adopting the [PCC] and its amendments, the Pennsylvania legislature has concluded that customers are better able than banks to minimize the risk of embezzlement." *Id.* at 714. The PCC provides that "a customer is not liable for the amount of an overdraft if the customer neither signed the item nor benefited from the proceeds of the item." 13 Pa. Cons. Stat. § 4401(b). In order to receive relief from the monetary loss associated with an unauthorized check, Plaintiff must properly notify the bank of the dispute in accordance with 13 Pa. C.S. § 4406(c) and must bring the claim within the relevant statute of limitation imposed by 13 Pa. C.S. § 4406(f). *See Envtl. Equip. & Serv. Co.,* 741 F. Supp. 2d at 721.

> First, section 4406(c) provides that:
>
> "If a bank sends or makes available a statement of accounts or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts."

13 Pa. Cons. Stat. §4406(c).

This customer notice requirement is triggered when the bank "makes available" the relevant information regarding the disputed negotiable instrument, including: the item number, date of payment and the amount of the transaction. 13 Pa. Cons. Stat. § 4406(a). Revised Official Comment 1. A customer must then review that information and notify the bank of any relevant dispute. *Id.* If a bank does not make sufficient information available for the customer to discover an unauthorized check, then the customer's duty under Section 4406(c) is not triggered. *Bucci*, 591 F. Supp. 2d at, 785.

Plaintiff "learned about this transaction sometime in 2013, but was not provided a copy of the check until sometime in 2014." (AC ¶ 33.) Specifically, Plaintiff alleges that she did not "obtain[] a copy of the Transaction Statement for the HELOC account" until sometime after January 30, 2014. (AC ¶ 36.) Plaintiff has failed to allege in her Amended Complaint that she provided Defendant with any notice, let alone notice with reasonable promptness. Moreover, it is also unclear from any of these factual statements when in fact Defendant made the statement available to Plaintiff. Plaintiff only pleads when *she* became aware of the Statement, not when Defendant first made the statement available. The clock begins to tick at the latter, not the former. Plaintiff's Amended Complaint is poorly pled; but could be cured through amendment.

Second, Section 4406(f) states in part:

> "Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection(a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration."

13 Pa. Cons. Stat. § 4406(f). "Known as the 'bank statement defense,' subsection (f) is a powerful weapon for banks because it places the risk of loss squarely on customers after one year has passed." *Envtl. Equip. & Serv. Co.*, 741 F.Supp.2d at, 715. "[I]n the absence of fraud by those invoking the statute of limitations, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff's ignorance, the defendant wrongfully exercises dominion." *Menichini v. Grant,* 995 F.2d 1224, 1231 (3d Cir. 1993). Thus, Plaintiff's period to bring this claim began to run when Defendant made the account statement or check available to Plaintiff. The issue is when such events occurred.

As previously addressed, Plaintiff states that she was not provided a copy of the check until sometime in 2014. (AC ¶ 33.) She also states that she was not provided a copy of the Transaction Statement until after January 30, 2014. (AC ¶ 36.) Neither of these factual

12

statements explain when *Defendant* made the check and/or Transaction Statement available to Plaintiff. Simply put, there is nothing in the Amended Complaint to explain when and if Defendant met, or failed to meet, the requirements of Section 4406(a). The Court notes that the check was deposited by Defendant in 2009. (AC ¶ 32.) As currently pled, the Court cannot find facts to support that Defendant failed to meet its Section 4406(a) requirements at that time. However, as amendment may cure this deficiency, Plaintiff is granted leave to amend her Amended Complaint within thirty (30) days from the date of the attached Order.[8]

### c. Count VI: Violation of the Electronic Fund Transfer Act, ("EFTA") 15 U.S.C § 1601 is Dismissed without Prejudice.

Plaintiff brings a claim against Defendant for violation of 15 U.S.C § 1601. (AC ¶¶ 61-64.) Plaintiff alleges that she discovered numerous unauthorized transactions in the Transaction Statement for the HELOC account. (AC ¶ 62.) Defendant asserts that Plaintiff failed to satisfy the statutory notice requirements as set forth in 15 U.S.C § 1693g(a), (MTD at 7), and failed to plead any extenuating circumstances which may mitigate the failure to meet the notice requirements. (MTD at 17.)

---

[8] The Court clarifies for all parties that this holding relates solely to the Amended Complaint's failure to allege facts showing that Defendant failed to comply with Section 4406(a) until 2013, or 2014. The Court notes that if Defendant complied with the requirements of Section 4406(a) when the check was first deposited in 2009, then Plaintiff's failure to become aware of, or to view, the check or the Transaction Statement until 2013 or 2014, does not toll the requirement in Section 4406(f). *See, e.g.*, *Envtl. Equip. & Serv. Co.*, 741 F. Supp. 2d at 718.
   Plaintiff argues that the statute of limitations should not begin to run until she became aware of the unauthorized check sometime after her husband's death on January 30, 2014. (Resp. at 4-5.) This argument is unavailing as "the discovery rule does not apply to toll actions commenced" under the PCC. *Estate of Clark ex rel. Clark v. Toronto Dominion Bank*, 2013 WL 1159014, at *8 (E.D. Pa. 2013); *see also Estate of Hollywood v. First Nat. Bank of Palmerton*, 859 A.2d 472, 481-82 (Pa. Super. Ct. 2004).
   Thus, absent fraudulent concealment, the statute of limitations runs from the date of Defendant's compliance with Section 4401(a) as to this disputed transaction. The Court looks to *Defendant's* actions, not Plaintiff's awareness. The Court notes that strict application of the relevant statute of limitations creates certainty in commercial transactions and perpetuates the overarching goals of the UCC. *Faber v. Wells Fargo Bank*, 2015 WL 1636967, at *4 (E.D. Pa. 2015).

15 U.S.C § 1693(a) defines an "unauthorized electronic fund transfer" as a transfer "from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer." 15 U.S.C. § 1693(a)(12). The EFTA states that a consumer will only be liable for such an unauthorized transfer if the "means of access", such as a signature, can be linked to the "person authorized" to use the account. *Id.* at § 1693g(a). The EFTA also mandates a notice requirement mandating that the consumer notify the financial institution of any dispute within sixty days. *Id.* Notice "is sufficient when such steps have been taken as may be reasonably required in the ordinary course of business to provide the financial institution with the pertinent information" regardless of whether the financial institution actually received that information. *Id.*

First, Plaintiff fails to plead that she ever provided any notice to Defendant. Plaintiff alleges that she received the Transaction Statement subsequent to her husband's death on January 30, 2014. (AC ¶ 36.) Even assuming that Plaintiff only received the notification around January 30, 2014, the sixty day period for notice had clearly lapsed prior to Plaintiff's filing of the Amended Complaint on January 21, 2015.

Second, in the Amended Complaint, Plaintiff does not allege any extenuating circumstances to explain this failure to provide timely notice. In her Response to Defendant's Motion to Dismiss, Plaintiff requests to file a Second Amended Complaint to allege facts showing that her late husband's illness and death constituted extenuating circumstances. (Resp. at 13-14.) However, Plaintiff has not provided, and the Court cannot find, any case wherein the circumstances Plaintiff alleged would justify failure to comply with the notice requirement.[9]

---

[9] In Plaintiff's Response, Plaintiff points to one case, comparing the failure to notify to the failure to comply with a statute of limitations: *Estate of Clark ex rel. Clark*, 2013 WL 1159014, at *6-19. (Resp. at 14 n. 6.) The facts in *Clark* are inapposite to those here. In *Clark*, plaintiff was the estate of a person who had recently died and the EFTA claim was based on a bank account owned by the deceased. *Id.* at *1, *2-*6. The *Clark* court held that plaintiff could proceed on a theory that there were extenuating circumstances excusing the deceased's failure to timely file the EFTA claim because the deceased suffered from cognitive and memory impairments due to his Parkinson's disease. *Id.* at *5. In contrast, in this case, Plaintiff's alleged theory to save her claim in a Second

14

Amendment will not cure this claim. The Court dismisses claim VI with prejudice.

**IV.     Conclusion**

The Court grants Defendant's Motion to Dismiss at to Counts I, II, III, IV, and VI and dismisses such counts with prejudice. The Court grants Defendant's Motion to Dismiss as to Counts V and dismisses such counts without prejudice. The Court grants Plaintiff thirty (30) days from the date of the attached Order to refile as to that claim only.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. Darnell Jones, II     J.

---

Amended Complaint would not state that she, as the owner of the account at issue, suffered any cognitive or memory impairments to the same degree as the *Clark* plaintiff. The Court cannot find any case to support her unique theory. This claim is dismissed with prejudice.